# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JEFFREY BROWN,** | **1:18-cv-01541-LJO-SAB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 18 and 20)** |
| **v.** | |
| **COUNTY OF MARIPOSA; DOUG BINNEWIES; CODY HART; SEAN LAND; JOHN C. FREMONT HEALTHCARE DISTRICT; and DOES 1-30,** | |
| **Defendants.** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

1

Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

Plaintiff Jeffrey Brown ("Plaintiff") was injured while being arrested and was taken to the Mariposa County Jail, where he alleges that he was denied necessary medical care for more than five months. Plaintiff brings this case against the County of Mariposa; County employees Cody Hart, Sean Land, and Doug Binnewies; John C. Fremont Healthcare District; and Does 1-30, alleging deliberate indifference under 42 U.S.C. § 1983 and state law causes of action for Bane Act violations and professional negligence (medical malpractice).

Defendants Binnewies, Hart, and Land (collectively, "County Defendants") and Defendant John C. Fremont Healthcare District moved to dismiss. ECF Nos. 18 and 20. Plaintiff opposed. ECF Nos. 22 and 23. Defendants replied. ECF Nos. 26 and 27. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g).

## III. **BACKGROUND**

On July 2, 2017, Plaintiff was injured while being arrested and was taken to the Mariposa County Jail. ECF No. 5, First Amended Complaint ("FAC") ¶ 16. He suffered injuries to his face that broke and splintered the bones around his right eye and cheek, creating "deformity, swelling[,] and pain." *Id*. He also suffered injuries to his jaw. *Id*. In addition, his right shoulder was injured, including a broken bone and tearing to his cartilage, tendons, and ligaments, resulting in "swelling, deformity, limitation of movement[,] and pain." *Id*. The injuries were severe enough that it was "readily apparent" that Plaintiff needed medical attention. *Id*.

Defendants Hart and Land were at all relevant times correctional lieutenants/commanders of the Mariposa County Jail. *Id*. ¶¶ 7-8. John C. Fremont Healthcare District contracts with Mariposa County

2

to provide on-site medical services to the Mariposa County Jail. *Id*. ¶ 17. The orthopedist who evaluated Plaintiff's shoulder injury and the "multiple doctors or surgeons" who examined Plaintiff's facial injuries informed Defendants John C. Fremont Healthcare District, Hart, Land, Does 1-20, and Mariposa County that Plaintiff needed immediate surgeries and that delay would result in additional medical procedures, more complicated medical procedures, or both, which would likely result in worse outcomes than if medical care were rendered sooner. *Id*. ¶ 20. Despite being aware of the doctors' recommendations, these Defendants refused to allow Plaintiff to have the surgeries. *Id*. ¶ 21. Defendants Hart and Land "flatly rejected the medical specialist's direct pleas that [Plaintiff] be scheduled for surgeries." *Id*. ¶ 23. The FAC alleges, on information and belief, that Defendants Hart and Land, and Doe Defendants 1-20, were motivated by a desire to punish Plaintiff for having been arrested on felony charges that included assaulting an officer and a desire to avoid having the County pay for the surgeries. *Id*. ¶ 24. Defendant Binnewies, who was at all relevant times the Sheriff-Coroner-Public Administrator of Mariposa County, failed to abide by his duties under Title 15 of the California Administrative Code to designate a physician, individual, or healthcare agency to establish healthcare policies, instead contracting with Defendant John C. Fremont Healthcare District for the limited purpose of providing onsite medical care to the inmates. *Id*. ¶¶ 9, 26.

Plaintiff remained in the Mariposa County Jail until was tried and acquitted of all felony charges arising from the arrest. *Id*. ¶ 27. He was released on November 14, 2017. *Id*. Plaintiff had the first set of surgical procedures to address his facial fractures on December 15, 2017, and he underwent shoulder surgery on May 5, 2018. *Id*. ¶¶ 28, 29. The shoulder surgery was "only a partial success" due to improper healing resulting from Defendants' delay, and the facial surgery likewise was more complicated and less successful than it would have been had it taken place in a timely manner. *Id*. As a result, Plaintiff continues to experience pain, disfigurement, and diminished capacity in both his face and shoulder. *Id*. ¶ 30.

\\\

# IV. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To overcome a Rule 12(b)(6) challenge, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is one which provides more than "a sheer possibility that a defendant has acted unlawfully." *Id.* A claim which is possible, but which is not supported by enough facts to "nudge [it] across the line from conceivable to plausible . . . must be dismissed." *Twombly*, 550 U.S. at 570.

A complaint facing a Rule 12(b)(6) challenge "does not need detailed factual allegations [but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the element of a cause of action will not do." *Id*. at 555 (internal citations omitted). In essence, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562. To the extent that any defect in the pleadings can be cured by the allegation of

additional facts, the plaintiff should be afforded leave to amend, unless the pleading "could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## V. DISCUSSION

Plaintiff brings four causes of action: a § 1983 claim for deliberate indifference against Defendants Hart and Land and Doe Defendants; a *Monell* claim against Defendants County of Mariposa, John C. Fremont Healthcare District, Binnewies, and Doe Defendants; a medical malpractice claim against John C. Fremont Healthcare District and Doe Defendants; and a Bane Act claim against all Defendants. Defendants variously move to dismiss all claims alleged in the FAC.

### A.    First Cause Of Action: 42 U.S.C. § 1983 Claim

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Furthermore, § 1983 requires that there be an actual connection or link between the actions of Defendants and the constitutional deprivations alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under § 1983, Plaintiff must satisfy the "linkage requirement"—meaning that he must link each named Defendant with some affirmative act or omission

that demonstrates a violation of Plaintiff's federal rights. Plaintiff must specify which Defendant(s) he feels are responsible for each violation of his constitutional rights and the factual basis, as his Complaint must put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

A § 1983 action premised on violation of the Fourteenth Amendment for inadequate medical care requires allegations that each defendant acted with deliberate indifference to serious medical needs. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (*en banc*). Inmates bringing deliberate indifference claims against prison officials "may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Id*. at 1067-68; *see also Mendiola–Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth Amendment protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are entitled to the potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment."). Under either clause, a plaintiff must show that the prison officials acted with "deliberate indifference." *Id*. at 1068.

Pretrial detainees bringing claims for deliberate indifference against individual defendants under the Fourteenth Amendment are evaluated under an objective standard. The elements of a pretrial detainee's claim under the Due Process Clause of the Fourteenth Amendment for violations of the right to adequate medical care are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), *cert. denied sub nom. County of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019). The defendant's conduct under the third element "must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each

particular case." *Id*. (quoting *Castro*, 833 F.3d at 1071 (internal alterations and quotation marks omitted)). "An *inadvertent* failure to provide adequate medical care does not, by itself, state a deliberate indifference claim for § 1983 purposes." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (emphasis in original) (quotation marks omitted). Instead, a plaintiff is required to "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125.

Plaintiff brings the deliberate indifference claim against Defendants Hart, Land, and Does 1-30. County Defendants argue that the FAC fails to allege facts to support an inference of serious medical need, lacks facts to support an inference that it was objectively unreasonable to fail to provide immediate surgery, does not adequately allege that Plaintiff suffered harm as a result of the delay, and fails to show that each of the named Defendants was deliberately indifferent.

### 1.      **Hart And Land**

Hart and Land do not dispute the first element, and the FAC adequately alleges that they made an intentional decision. They do contest the second element, arguing that the facts alleged do not support an inference of a serious medical need, because the failure to get immediate surgeries resulting in "less favorable" results, when he was evaluated by medical doctors, do not demonstrate that the injury was sufficiently serious to satisfy the second element.

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id*. at 1059-60.

In *Jett v. Penner*, the Ninth Circuit reversed a grant of summary judgment on a deliberate indifference claim where the evidence created a triable issue of fact whether a physician's failure to refer an inmate to an orthopedist two and a half months after examining the plaintiff's broken thumb constituted deliberate indifference. 439 F.3d 1091, 1097-98 (9th Cir. 2006). Although the plaintiff there did see doctors, as Plaintiff here did, the failure to provide necessary care was adequate to survive a motion for summary judgment. A delayed or denied medical procedure, including surgery, can serve as the basis for a deliberate indifference claim. *See McGuckin*, 974 F.2d at 1060 (holding that deliberate indifference claim resting on "mere delay of surgery" can survive if the denial caused harm); *Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500, 504 (9th Cir. 2017) (finding triable issue of fact on deliberate indifference claim where doctor recommended spinal objections and there was no evidence that they were ever administered); *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (noting that for purposes of establishing a serious medical need, "a delay as short as three months in receiving necessary dental care can create a genuine issue of material fact" (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989))); *Jett*, 439 F.3d at 1097 (finding the circumstances "akin to cases finding deliberate indifference where prison officials and doctors deliberately ignore[ ] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner" (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066–67 (9th Cir. 1992))); *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("In short, allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference."); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (per curiam) ("If it is true that prison officials denied Shapley surgery despite the repeated recommendations of Shapley's physicians, Shapley may well have a valid section 1983 action under [*Estelle*]."). The FAC alleges that broken bones in Plaintiff's face and shoulder went without necessary surgery for months, resulting in deformity, pain, and improper healing. This adequately alleges a serious medical need.

The FAC adequately alleges that Defendants acted in a way that was objectively unreasonable,

"even though a reasonable official in the circumstances would have appreciated the high degree of risk involved." *Gordon*, 888 F.3d at 1125. The facts and circumstances alleged—that prison officials overruled treating physicians' determinations that Plaintiff required prompt surgery for his broken orbital bone and broken arm, out of spite—satisfy the requirement that there be something akin to reckless disregard for the consequences of their actions. County Defendants point to the FAC's allegation that the physician whom Plaintiff consulted after his release from jail first attempted pre-operative therapy before scheduling shoulder surgery, FAC ¶ 28, arguing that this shows that the delay was nothing more than a difference of medical opinion that cannot have been an objectively unreasonable act. ECF No. 20 at 5. This misses the point. At the time that Hart and Land allegedly refused to permit Plaintiff to undergo the surgeries that his treating physicians prescribed, they intervened on non-medical grounds to deny what they believed to be necessary care. FAC ¶¶ 17-24. That a different physician later pursued therapy prior to ordering surgery, for reasons unexplained in the FAC, does not undermine the allegation that at the time they acted, Hart and Land behaved in an objectively unreasonable manner. Plaintiff has satisfied the third prong.

Finally, County Defendants argue that the facts alleged in the FAC are inadequate to support an inference that the delay in surgery caused Plaintiff harm, focusing on the language in the FAC that the delay resulted in "less favorable" outcomes than if the surgeries had been conducted at the time that the specialists first ordered them. The FAC's allegations, however, go beyond that. The FAC also alleges that delay resulted in surgeries that were more complicated and less successful than they otherwise would have been. When the surgeries finally took place, the facial surgery was "significantly more complicated" and with a much more painful recovery than it otherwise would have been. FAC ¶ 28. In addition, the shoulder surgery was "only a partial success" because the delay in surgery allowed the shoulder to heal improperly. *Id.* ¶ 29. As a result, Plaintiff continues to experience pain, diminished function of his face and shoulder, and disfigurement. *Id.* ¶ 30. The court in *Jett* found a triable issue where there was substantial evidence to find that the delay was harmful because the untreated fracture

failed to align properly upon healing, resulting in a deformity.  *Id*.  Plaintiff makes the same claim here.  Therefore, for purposes of this motion, accepting all of Plaintiff's allegations of material fact as true and construing them in the light most favorable to Plaintiff, he has adequately alleged that Brown and Hart were deliberately indifferent to his serious medical needs.

### 2.   Doe Defendants

The FAC also names Does 1-30.  Doe 1 was the Medical Director at Mariposa County Jail, and Does 21-30 were correctional employees for the County of Mariposa who had supervisory responsibility of Brown and Hart.  FAC ¶ 12, 15.  Supervisory officials are not liable under § 1983 for actions of their subordinates under a theory of *respondeat superior*.  *Iqbal*, 556 U.S. at 676.  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  "A supervisor may be liable if the supervisor knew of the violations and failed to act to prevent them."  *Id*.; *see also Jett*, 439 F.3d at 1098 ("As prison administrators, Dr. Peterson and Cheryl Pliler are liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help.").

The FAC alleges that Does 1-20 "were aware of the doctors' unequivocal recommendations" that Plaintiff be scheduled for necessary surgeries but refused to allow them to be scheduled.  FAC ¶ 21.  If true that Doe 1, the Medical Director, was aware of the refusal, on non-medical grounds, to schedule Plaintiff for necessary surgery and refused to act, this could state a claim for deliberate indifference.  *See Snow*, 681 F.3d at 989 (reversing grant of summary judgment to warden and assistant warden defendants where the evidence showed they were aware of the plaintiff's serious hip condition that "needed surgery" yet "failed to act to prevent further harm").

Does 2-10 are correctional employees who allegedly also refused to permit the surgeries to take

place.  For the reasons that the FAC states a claim against Hart and Land, it also states a claim against any other correctional officers who acted in like manner.

Does 11-20 are employees, agents, or contractors of John C. Fremont Healthcare District who provided medical care at the jail.  The FAC fails to allege that these medical employees had authority to schedule the surgeries that corrections officers like Hart and Land allegedly blocked from taking place. If some physicians who examined Plaintiff and recommended surgery were overruled by corrections officers, the FAC does not allege why or how these providers of medical care had different authority that would not have been overruled by corrections officers.

Accordingly, the claim for deliberate indifference against Does 11-20 is **DISMISSED WITH LEAVE TO AMEND**.  The motion to dismiss is **DENIED** as to the other Defendants.

**B.    Qualified Immunity**

County Defendants argue that Hart and Land and Does 1-10 and Does 21-30 are entitled to qualified immunity because their conduct was not objectively unreasonable.  Qualified immunity is an affirmative defense that "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."  *Pearson v. Callahan*, 555 U.S. 223 (2009).  The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Further, it "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id*.  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id*. (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

To determine whether officers are entitled to qualified immunity, a court conducts a two-step inquiry.  "The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if

true, establish a constitutional violation." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 231. To be a clearly established constitutional right, a right must be sufficiently clear "that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citation and internal quotation marks omitted). "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 20. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). "[C]ourts have the discretion to determine which prong of qualified immunity should be analyzed first." *Jessop v. City of Fresno*, 918 F.3d 1031, 1035 (9th Cir. 2019) (citing *Pearson*, 555 U.S. at 236).

Because the Court found above that Plaintiff adequately pleaded a claim for a constitutional violation, the analysis proceeds to the second stop of determining whether the right was clearly established at the time of the alleged violation. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). Defendants argue that they are entitled to qualified immunity because it was "not 'beyond debate' that any County Defendant 'pursued a medically unreasonable course of treatment' by declining to immediately schedule Plaintiff's surgeries." ECF No. 20-1 at 13 (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)).

County Defendants are correct that "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not

12

amount to deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). That is not, however, what the FAC alleges. The FAC alleges that despite Plaintiff's broken bones, pain, and disfigurement, and despite physicians' "unequivocal recommendations" "that immediate surgeries were medically necessary," Defendants Hart and Land refused to allow Plaintiff to receive the medical treatment that physicians had ordered. FAC ¶¶ 20-21. "[I]t has been clearly established in this Circuit for decades that prison officials are deliberately indifferent when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hamby*, 821 F.3d at 1096–97 (Gould, J., concurring in part and dissenting in part) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). The facts as alleged in the FAC do not make out a case for a difference in medical opinion or a mere failure to schedule a surgery in as prompt a fashion as Plaintiff would prefer; the FAC alleges that Defendants Hart and Land overruled physicians' recommendations for medically necessary care (motivated, on information and belief, out of a desire to punish Plaintiff because he had been arrested on felony charges of assaulting an officer). This case is therefore unlike *Hamby*, where the Ninth Circuit affirmed a grant of summary judgment to prison officials, finding that they had "acted on a bona fide medical opinion" to pursue a course of non-surgical treatment for a reducible hernia, a treatment that "many cases" had found not to violate the Eighth Amendment. 821 F.3d at 1094-95; *see also id.* at 1095 ("At worst, we have here another difference of bona fide medical opinion."). The allegations in the FAC are that prison officials overruled bona fide medical recommendations to deny Plaintiff treatment.

In *Colwell*, the record showed that the department of corrections "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy" that if a prisoner had one functioning eye, then the prisoner would be denied surgery even if the other eye required cataract surgery. 763 F.3d at 1069; *see also id.* at 1068 ("A reasonable jury could find that Colwell was denied surgery, not because it wasn't medically indicated, not because his condition was misdiagnosed, not because the surgery wouldn't have helped him, but because the policy of the NDOC is to require an inmate to endure

13

reversible blindness in one eye if he can still see out of the other. This is the very definition of deliberate indifference."). Here, the decision to overrule physicians' recommendations for surgery based on a non-medical ground came not from a written policy but instead, the FAC alleges, from the caprice of two individual defendants. The result is the same. "[A] prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon." *Wakefield*, 177 F.3d at 1165.

The Supreme Court has since 1976 made clear that deliberate indifference to serious medical needs of prisoners violates the Constitution when "the indifference is manifested by . . . by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Qualified immunity does not bar Plaintiff's claim for deliberate indifference at this stage of the litigation.

## C. Second Cause Of Action: *Monell* Liability As To County Of Mariposa, John C. Fremont Healthcare District, And Binnewies

Plaintiff brings claims against County of Mariposa, John C. Fremont Healthcare District, Binnewies, and Does 21-30 under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), which provides that municipalities may be liable for unconstitutional acts under § 1983. *Monell* is clear, however, that "a municipality cannot be held liable under § 1983 *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Instead, a municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id*. at 694. A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668,

681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). More generally, a plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino County*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

A policy or custom may be shown under *Monell* by establishing the existence of: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) the decision of a decision-making official who was, as a matter of state law, a final policymaking authority and whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). A policy is "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (same). "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt*, 954 F.2d at 1474). A custom is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). However, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [municipality] and the opportunity to conform to constitutional dictates.'" *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011).

Additionally, a municipal defendant is liable only where the municipality's policies or customs "evince a 'deliberate indifference' to the constitutional right and are the 'moving force' behind the constitutional violation." *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010). Deliberate indifference exists "when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Oviatt*, 954 F.2d at 1477 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The deliberate indifference standard for municipalities is an objective one. *Castro*, 833 F.3d at 1076. To show that a policy or custom is the "moving force" behind a violation, a plaintiff must allege facts proving that the policy or custom was "closely related to the ultimate injury," *City of Canton*, 489 U.S. at 391, that is, the constitutional violation was caused by the municipal policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Allegations concerning *Monell* liability based on the existence of a policy are subject to the pleading requirements of *Twombly*/*Iqbal*. As the Ninth Circuit has explained, even in the context of a *Monell* claim, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). While the Ninth Circuit previously had a liberal pleading standard for *Monell* claims, "[c]ourts in this circuit now generally

dismiss claims that fail to identify the specific content of the municipal entity's alleged policy or custom." *Little v. Gore*, 148 F. Supp. 3d 936, 957 (S.D. Cal. 2015) (citation omitted).

Defendant John C. Fremont Healthcare District argues that the FAC fails to allege any custom, policy, or practice that caused any constitutional violation. County Defendants join in the argument that Plaintiff failed to support the allegations with sufficient facts.

The FAC alleges that County of Mariposa, John C. Fremont Healthcare District, Binnewies, and Does 21-30 have a policy or practice of failing to schedule necessary surgeries for county jail inmates and permitting correctional staff "to determine what medical treatment will be provided to inmates, and letting correctional staff overrule the recommendations of medical professionals regarding necessary medical treatment." FAC ¶ 36. It further alleges that these Defendants failed to establish written policies and procedures required by Title 15 of the California Administrative Code, including the required health care procedures manual, procedures for individualized treatment plans, quality assurance plan, and an access to treatment policy. *Id.* ¶ 37. The FAC also alleges that the individually named defendants acted "pursuant to the expressly adopted official policies or longstanding practices, customs or de facto policies" of the Defendants named in this section. *Id.* ¶ 38. It states that these "customs, policies, practices and procedures, or lack thereof, enabled and/or caused" the individually named defendants to act with deliberate indifference and that "[b]y perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and wrongful acts" described in the FAC, they acted with intentional, reckless, and callous disregard for Plaintiff's rights. *Id.* ¶ 39.

The FAC hedges on what theory of *Monell* liability it relies on, citing both a potential express written policy or a longstanding unwritten practice or custom. "[I]n the context of a pretrial detainee's due process rights, the Ninth Circuit has held that the objective deliberate indifference standard is met when a 'plaintiff [] establish[es] that the facts available to [entity] policymakers put them on actual or *constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Gonzalez v. County of Merced*, 289 F. Supp. 3d 1094, 1099

(E.D. Cal. 2017) (alterations in original) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)).  Because the thrust of the FAC is that the named Defendants failed to establish written policies, leading to an unwritten practice that permitted correctional officers to deny Plaintiff access to medically necessary surgeries, the Court analyzes the *Monell* claim under the practice-or-custom framework.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino*, 99 F.3d at 918.  "The line between 'isolated or sporadic incidents' and 'persistent and widespread conduct' is not clearly delineated."  *Warkentine v. Soria*, No. 1:13-CV-01550-LJO, 2014 WL 2093656, at *6 (E.D. Cal. May 19, 2014).  *See also Gonzalez*, 289 F. Supp. 3d at 1099 ("It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim.").  Examining the cases on the topic, this Court recently observed that "[p]erhaps the most that can be said is that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality."  *J.M. by & Through Rodriguez v. County of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018).

Plaintiff characterizes the practice in the FAC as failing to adopt written policies as required under Title 15 of the California Administrative Code and instead having an established custom of permitting correctional staff to determine what medical treatment will be provided and to overrule the recommendations of medical professionals.  The FAC points to no other similar incidents that bolster the claim of a widespread practice that has become a traditional method of carrying out policy.  Instead, Plaintiff uses the allegation that Hart and Land violated his constitutional rights as evidence that there must have been a widespread policy or practice permitting them to do so.  Without further factual support, however, this claim does not survive.  *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)

("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."); *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1203 (W.D. Wash. 2008) (granting summary judgment to defendant City of Seattle because "absent additional proof, the mere existence of one or two incidents of unconstitutional conduct is insufficient to make out a 'pattern and practice' or 'policy and custom' claim under § 1983"); *Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations."); *Moland v. City of Ceres*, 1:16-cv-01073-LJO-SKO, 2016 WL 6094830, at *5 (E.D. Cal. Oct. 18, 2016) ("A conclusory allegation regarding the existence of a policy or custom unsupported by factual allegations is insufficient to state a *Monell* claim."). "While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court." *Roy v. Contra Costa County*, No. 15-cv-02672-TEH, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016), *aff'd*, 694 F. App'x 536 (9th Cir. 2017); *Aguaristi v. County of Merced*, No. 1:18-cv-01053-DAD-EPG, 2019 WL 330908, at *4 (E.D. Cal. Jan. 25, 2019) (same) (quoting *Roy*).

Accordingly, Plaintiff's claim for *Monell* liability is **DISMISSED WITH LEAVE TO AMEND**.

## D. Third Cause Of Action: Professional Negligence (Medical Malpractice)

The FAC's third claim for relief is a medical malpractice claim against John C. Fremont Healthcare District and Does 1-20. Under California law, the elements for professional negligence, such as medical malpractice, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal. 3d 220, 229-230 (1982). Physicians specializing in a medical area are "held to that standard of learning and skill normally possessed by such specialists in the same or similar locality under the same or similar

19

circumstances." *Quintal v. Laurel Grove Hospital*, 62 Cal. 2d 154, 159-160 (1964).

Plaintiff agrees to dismiss the medical malpractice claim against John C. Fremont Healthcare District "as a public entity." ECF No. 22 at 2.

The FAC also names Does 1-20 in this section. Does 2-10 were correctional employees working for the County of Mariposa. *Id.* ¶ 14. They were not medical professionals and were not therefore under any duty "to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise." *Turpin*, 31 Cal. 3d at 229. *See also, e.g.*, *Barris v. County of Los Angeles*, 20 Cal. 4th 101, 108 (1999) ("The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." (alteration in original) (quoting *Alef v. Alta Bates Hosp.*, 5 Cal. App. 4th 208, 215 (1992))); Cal. Civ. Proc. Code § 340.5 (setting forth the statute of limitations for medical malpractice actions against health care providers and defining "professional negligence" to mean "a negligent act or omission to act by a *health care provider in the rendering of professional services*, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital" (emphasis supplied)). Because Does 2-10 were not health care providers and because the FAC includes no allegations that they rendered professional services, the medical malpractice claims against them fail.

The rest of the Doe Defendants named in the medical malpractice claim had roles related to the provision of medical care, but the FAC nonetheless fails to allege a professional negligence claim against them as well. Doe 1 was the Medical Director at Mariposa County Jail. FAC ¶ 12. Does 11-20 were "employees, agents[,] or contractors of John C. Fremont Healthcare District who were providing medical care at the jail." *Id.* ¶ 14. The extent of the allegations against these Defendants is that the physicians who examined Plaintiff informed Hart, Land, and Does 1-20 that Plaintiff required "immediate surgeries" but that they "refused to allow Brown to have the surgeries," thereby

"abdicat[ing] their statutory and constitutional duties to medically protect [Plaintiff]." *Id.* ¶¶ 21-22. The next paragraph of the FAC states that Hart and Land "flatly rejected the medical specialist[s'] direct pleas" that Plaintiff be scheduled for surgeries. *Id.* ¶ 23. These allegations do not plausibly allege that any of these Doe Defendants committed medical malpractice. The allegations, viewed in a light most favorable to Plaintiff, are that these Doe Defendants were aware that other physicians provided care to Plaintiff and had recommended a course of treatment that Hart and Land had the authority to—and did—prevent. There are no allegations that they were involved with the provision of care to Plaintiff.

Plaintiff argues that the Doe Defendants should not be dismissed because the appearing Defendants do not have standing to argue for dismissal against those claims, because they are permissibly pleaded and because Plaintiff has not received his medical records from Mariposa County Jail despite multiple requests for them. ECF No. 23 at 6-7. The use of Doe Defendants is permissible where a plaintiff does not learn the identity of potential defendants prior to the filing of a complaint. "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (discussing *Gillespie* and stating that dismissal of § 1983 action against Doe prison official for deliberate indifference to serious medical need would be affirmed if the complaint did not state a claim upon which relief could be granted). If Plaintiff had stated a claim for medical malpractice against these Doe defendants, he would be given an opportunity to proceed to discovery to learn their identities; because he does not, the claim is dismissed.

The FAC does not state a claim for medical malpractice. Though the allegations make it difficult to envision a successful claim for medical malpractice consistent with the facts pleaded in the FAC, Plaintiff will nevertheless be given an opportunity to amend the claim. The third claim for relief, for medical malpractice, is **DISMISSED WITH LEAVE TO AMEND**.

**E.      Fourth Cause Of Action: Bane Act**

The fourth claim for relief is for violation of the Bane Act, brought against John C. Fremont Healthcare District, Mariposa County, Hart, Land, Binnewies, and Does 1-20. [1]  The Bane Act authorizes individual civil actions for damages and injunctive relief by individuals whose federal or state rights have been interfered with by threats, intimidation, or coercion.  *See* Cal. Civ. Code § 52.1(a) (proscribing interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998) (interpreting Bane Act's use of "interferes" to mean "violates").  "[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."  *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 798 (2017)).  Instead, the Bane Act requires that a defendant had a specific intent to violate the plaintiff's protected rights.  This specific-intent inquiry centers on two questions:  "First, 'is the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, 'did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'"  *Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Reese*, 17 Cal. App. 5th at 803 (alterations omitted)).  Specific intent does not require a showing that a defendant knew he was acting unlawfully; "[r]eckless disregard of the 'right at issue' is all that [i]s necessary."  *Cornell*, 17 Cal. App. 5th at 804.

Because deliberate indifference claims have been "associated with affirmatively culpable

---

[1] Plaintiff agrees that the Court may dismiss the Bane Act claim as to John C. Fremont Healthcare District.  ECF No. 22 at 2.

conduct," a successful claim that "prison officials acted or failed to act with deliberate indifference to [a plaintiff's] medical needs in violation of his constitutional rights . . . adequately states a claim for relief under the Bane Act." *M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898-99 (N.D. Cal. 2013); *see also Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("The Court has found that Plaintiff adequately pleaded a [Fourteenth Amendment] claim for deliberate indifference, which requires alleging reckless disregard; Plaintiff has therefore adequately alleged that [defendant] acted with the requisite specific intent under the Bane Act."). Accordingly, because the Court found above that the FAC states a claim for deliberate indifference as to Hart, Land, and Does 1-10, the motion to dismiss the Bane Act claim as to those Defendants is **DENIED**. Plaintiff argues that Mariposa County is liable on a theory of *respondeat superior* pursuant to California Government Code § 815.2(a) for the actions of its employees. That argument is addressed in the following section. The FAC lacks facts as to the other Defendants that would support a Bane Act Claim and is, as to the remaining Defendants, **DISMISSED WITH LEAVE TO AMEND**.

## F. State Tort Immunity

### 1. California Government Code § 820.2

County Defendants argue that the third and fourth claims are barred by state statutory immunities. "Discretionary immunity applies to shield a California public employee, and thereby his or her employer, *see* Cal. Gov't Code § 815.2 (b), from liability for state law violations when an injury results 'from [the employee's] act or omission where the act or omission was the result of the exercise of the discretion vested in [the employee], whether or not such discretion be abused.'" *Recchia v. City of Los Angeles Dep't of Animal Servs*., 889 F.3d 553, 563 (9th Cir. 2018) (quoting Cal. Gov't Code § 820.2). "The immunity does not apply to all acts by public employees within the literal meaning of the term 'discretionary'" but is instead "more limited." *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007), *as modified on denial of reh'g* (Feb. 21, 2007). Section 820.2 draws a line between "planning" and "operational" levels of decisionmaking. *Johnson v. State*, 69 Cal. 2d 782, 794 (1968).

The discretionary act immunity applies to "'basic policy decisions [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.'" *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (alterations in original) (quoting *Johnson*, 69 Cal. 2d at 793). "Such 'areas of quasi-legislative policy-making . . . are sufficiently sensitive' to call for judicial abstention from interference that 'might even in the first instance affect the coordinate body's decision-making process.'" *Id*. (internal citations omitted) (quoting *Johnson*, 69 Cal. 2d at 793-94). Section 820.2 does not immunize lower-level or ministerial decisions. *Id*. Defendants have not demonstrated that the immunity applies. The California Supreme Court has emphasized that the immunity "applies only to *deliberate and considered* policy decisions, in which a '[conscious] balancing [of] risks and advantages . . . took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision.'" *Id*. Defendants have not met their burden of demonstrating that they consciously balanced the risks and benefits required to make a showing that discretionary immunity applies. *See Lopez v. S. Cal. Rapid Transit Dist*., 40 Cal. 3d 780, 794 (1985) (holding that because entitlement to the immunity requires a showing that the employee consciously exercised discretion by balancing potential risks and advantages, "[s]uch a showing was not and could not have been made by [the defendant] at the demurrer stage"); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 640 (9th Cir. 2012) ("an employee's normal job duties are not determinative; the burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy decision made by an employee who consciously balanced the decision's risks and benefits"); *Salvi v. County of San Diego*, No. 18CV1936 DMS (MDD), 2019 WL 1671001, at *8 (S.D. Cal. Apr. 17, 2019) ("Defendants have not shown the actions of the Individual Defendants fall into that category, and thus section 820.2 also does not warrant dismissal of Plaintiffs' state law claims."). The motion to dismiss based on discretionary immunity is therefore **DENIED**.

## 2. **California Government Code § 844.6**

Defendants also argue that the County is immune under California Government Code § 844.6, which provides that, with certain statutory exceptions, "a public entity is not liable for . . . [a]n injury to any prisoner." Cal. Gov. Code § 844.6(a). Plaintiff responds that his theory of liability for the County for the Bane Act claim rests not on direct liability but instead on vicarious liability pursuant to California Government Code § 815.2, which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). *See also Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) ("California, however, has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune."). Because the claim against the County is based on vicarious liability rather than direct liability, Plaintiff reasons, the County's general immunity under § 844.6 is inapplicable.

This argument was rejected in *Towery v. State of California*, 14 Cal. App. 5th 226 (2017), *as modified* (Aug. 14, 2017). In *Towery*, the California Court of Appeal held that the Bane Act contains nothing "indicat[ing] an intent to abrogate this specific immunity provision" in § 844.6. *Id*. at 234 ("Government Code section 844.6 does not leave any ambiguity about its applicability to a claim against a public entity under some other statute, such as Civil Code section 52.1, that simply creates a general legal duty."). In dismissing the claim, the court further stated that although plaintiff had not alleged a theory of vicarious liability, § 844.6 "also precludes any theory of vicarious liability against the State under the Bane Act." *Id*. at 234 n.8. Section 844.6(d) states that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov. Code § 844.6(d). It further provides, however, that except for medical malpractice claims, a public entity "may *but is not required* to indemnify any public employee, in any

case where the public entity is immune from liability under this section." Because "a statute of general application that merely creates a liability applicable to public entities is not sufficient to override a specific immunity provision," and the Bane Act's general provision of liability lacks any intent to abrogate the immunity provided in § 844.6, in the absence of a specific statutory exception, the plain language of § 844.6 bars Plaintiff's Bane Act claim. *Towery*, 14 Cal. App. 5th at 232-33. *See also Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1383 (2010) ("Although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does not apply in the case of injuries to prisoners." (citing Cal. Gov. Code § 844.6)). Plaintiff qualifies as a prisoner, Cal. Gov. Code § 844 (defining "prisoner" to include an inmate of a prison, jail, or penal or correctional facility), and his Bane Act claim is accordingly barred by § 844.6. *See Warren v. County of Riverside*, No. ED CV 18-1280-DMG (SPx), 2019 WL 994021, at *5 (C.D. Cal. Jan. 4, 2019) (dismissing Bane Act claim for vicarious liability against County of Riverside based on § 844.6 immunity); *Neuroth v. Mendocino County*, No. 15-CV-03226-NJV, 2016 WL 379806, at *5 (N.D. Cal. Jan. 29, 2016) (dismissing Bane Act claim as to Mendocino County because "Plaintiff's reliance on a theory of vicarious liability through an employee through § 815.2 in order to avoid the immunity provisions of § 844.6 fails" (citing *Lawson*)). The Bane Act claim against Mariposa County is **DISMISSED WITHOUT LEAVE TO AMEND**.

**G.**    **Prayer For Punitive Damages**

Defendants move to remove the FAC's request for punitive damages.[2] "It is well-established that a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (internal quotation

---

[2] The district courts in this circuit are split as to whether such a motion is properly categorized as a motion to strike pursuant to Fed. R. Civ. P. 12(f) or a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Scalia*, 308 F. Supp. 3d at 1089-90 (discussing split in case law and concluding that the motion failed, regardless of how it was construed).

marks, alterations, and citations omitted). "The standard for punitive damages under § 1983 mirrors the standard for punitive damages under common law tort cases," and "malicious, wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for assessing punitive damages." *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 34 (1983)). Because the Court finds that the Plaintiff has alleged a claim for deliberate indifference, which requires a showing of "something akin to reckless disregard," *Castro*, 833 F.3d at 1071, and the standard for the availability of punitive damages in a 1983 action includes "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless* or callous *indifference to the federally protected rights* of others," *Dang*, 422 F.3s at 807 (emphasis added), Plaintiff's request for punitive damages survives.[3]

## VI. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 18 and 20) is **GRANTED IN PART** and **DENIED IN PART**:

1. Defendants' motion to dismiss Plaintiff's first cause of action, for deliberate indifference pursuant to § 1983, is **GRANTED WITH LEAVE TO AMEND** as to Does 11-20 and is in all other respects **DENIED**;

2. Defendants' motion to dismiss Plaintiff's second cause of action, for *Monell* liability, is **GRANTED WITH LEAVE TO AMEND**;

3. Defendants' motion to dismiss Plaintiff's third cause of action, for medical malpractice, is **GRANTED WITH LEAVE TO AMEND**;

---

[3] Defendant John C. Fremont Healthcare District also moves to remove the request for punitive damages against it on the second ground that California law requires that a plaintiff pursuing a claim for punitive damages against a healthcare provider must first obtain court approval under California Code of Civil Procedure § 425.13. That provision provides in pertinent part that "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed." Cal. Civ. Proc. Code § 425.13(a). It requires the party to establish a "substantial probability that the plaintiff will prevail on the claim" before being permitted to include a claim for punitive damages. *Id.* Because the Court has dismissed the substantive claims relating to John C. Fremont Healthcare district, the Court need not address this argument, though it has addressed this argument in other cases. *See Scalia*, 308 F. Supp. 3d at 1091-92 (rejecting argument that § 425.13 applies in federal court).

4. Defendants' motion to dismiss Plaintiff's fourth cause of action, for violation of the Bane Act, California Civil Code § 52.1, is **DENIED** as to Defendants Hart, Land, and Does 1-10; **GRANTED WITHOUT LEAVE TO AMEND** as to Mariposa County; and **GRANTED WITH LEAVE TO AMEND** as to the other Defendants named in this claim;

5. Defendants' motion to dismiss Plaintiff's prayer for relief for punitive damages is **DENIED**;

6. Plaintiff shall file any amended complaint within **20 days** of electronic service of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated:   **May 3, 2019**                    **/s/ Lawrence J. O'Neill**
                                         UNITED STATES CHIEF DISTRICT JUDGE